## Case No. 7,875.

### KNEASS v. SCHUYLKILL BANK.

[4 Wash. C. C. 9;[1] 1 Robb. Pat. Cas. 303; Merw. Pat. Inv. 234.]

Circuit Court, Pennsylvania.[2] Oct. Term, 1820.

PATENTS—VIOLATION—GENERAL ISSUE — MISTAKE IN SPECIFICATION—COPPER-PLATE PRINTING ON BANK NOTES.

1. Quaere. If printing on the back of bank notes with steel plates, is an infringement of a patent for copper-plate printing on the bank notes.

[Cited in Hotchkiss v. Greenwood, 11 How. (52 U. S.) 271; Smith v. Goodyear Dental Vulcanite Co., 93 U. S. 486.]

2. In actions for violating a patent right, the defendant on the general issue, without notice, may give in evidence the act of congress without pleading it; also alienage, and a license to use the machine may be so given in evidence.

3. Copper-plate printing on the back of bank notes, is an art for which a patent may issue.

[Cited in O'Reilly v. Morse, 15 How. (56 U. S.) 131.]

4. Under the general issue, without notice, the defendant cannot give in evidence any matters mentioned in the sixth section of the act of congress [1 Stat. 111].

5. The meaning of the term "useful" in the act of congress.

[Cited in Whitney v. Emmett, Case No. 17,-585; Smith v. Downing, Id. 13,036; Andrews v. Wright, Id. 382.]

[Cited in Fowler v. Swift, 3 Ind. 190; Dunbar v. Marden, 13 N. H. 318; Rowe v. Blanchard, 18 Wis. 442; Tod v. Wick, 36 Ohio St. 393. Cited in brief in Dickinson v. Hall, 14 Pick. 219; Nash v. Lull, 102 Mass. 62.]

6. On the general issue without notice, the defendant may object to the plaintiff's recovery, on the ground that there is no specification, or that it is unintelligible; that the patent is broader than the discovery; that it is for an improvement which is not distinguished from the original invention; and that the suggestions of the petition are not recited in the specification.

[Cited in Whitney v. Emmett, Case No. 17,585; Hogg v. Emerson, 6 How. (47 U. S.) 484.]

7. A mistake in an expression, proved to be so by other parts of the specification, will not vitiate the patent.

8. It is unnecessary to describe in the specification what is in common use, and well known.

9. Merely describing in the specification the parts of the rolling press, and the modus operandi, do not make them parts of the thing granted.

This was an action for the violation of the plaintiff's patent right [granted April 28, 1815].

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] [District not given.]

Charles Ingersoll and Mr. Phillips, for plaintiff.

Mr. Bradford, Joseph Ingersoll, and Mr. Smith, for defendants.

·WASHINGTON, Circuit Justice (charging jury). This is an action to recover damages for a violation of the plaintiff's patent right. The declaration states the granting of the patent to the plaintiff, as the inventor of a new and useful improvement in printing on the back or reverse face of bank notes or bills, as an additional security against counterfeiture; and the breach laid in the declaration is, that the defendants did, without the consent or license of the plaintiff, make, devise, use, and sell the thing so invented, in violation, &c. To this declaration the defendants have pleaded the general issue, without giving notice of any special matter intended to be offered in evidence. The specification annexed to the patent sets forth with much precision, the mode of printing copper-plates, with a description of the rolling press employed in the operation; varying very little, if at all, from the common rolling press; and then concludes in the following terms: "The improvement or application I wish to secure is, to print copper-plate on both sides of the note or bill; or copper-plate on one side, and letter press on the other; or letter press on both sides of a bank note or bill, as an additional security against counterfeiture."

The first point which arises is that put in issue by the plea. Have the defendants, in point of fact, infringed the plaintiff's right? This is denied by the defendants, and the question to which this denial gives rise, is strictly within the province of the jury to decide. The nature and extent of the plaintiff's right have already been stated. The defendants admit that they have used bank notes with prints impressed by steel plates on the reverse face, and letter press on the face; but they deny that this is copper-plate printing, as expressed in the patent. Upon this point the parties are at issue. To aid the court and jury in this inquiry, books of science have been referred to, which, I must acknowledge, have shed much less light on the subject, than might have been expected. In Rees's Encyclopedia, printing is divided into common press and rolling press. as general terms. The latter is said to be employed in taking off prints or impressions from copper-plates, engraven or etched. The inquiry respecting the nature of copper-plate printing, is answered by a reference to rolling press printing. The only conclusion which I can draw from all this is, that rolling press printing was originally made from engravings on copper, and that the continued use of this metal for a great length of time, rendered the term synonymous with rolling press printing, which, nevertheless, appears to be the general term in contradistinction to common press printing. It would seem not improbable. that copper-plate printing became, in process of time, a term used to express printing from engravings without reference to the metal on which the engravings were made, and continued to be so used until a late period, when the mode of engraving steel plates was discovered. Joubert, who, in his Dictionary of Arts and Sciences, describes a copper-plate printer to be one who makes impressions from images or other works, engraved on copper, pewter or other matter; seems in a great measure to countenance this supposition.

After all, it must be acknowledged, that those authorities fall short of affording that degree of satisfaction upon which the judgment can safely rest; and it may therefore be more useful to inquire, whether in common parlance, amongst men acquainted with and practising this art, copper-plate printing was generally understood, particularly about the year 1815, when this patent was granted, to include printing from engravings on steel or other metals, as well as copper-plates? Aikins, Duffie, Coffin, and Miers, all whom are either engravers or printers from engravings, are relied upon by the plaintiff's counsel to prove the affirmative, and they also state that no man skilled in the art can distinguish one from the other; that it is the same art, and may be used indifferently by the same workman. The first witness is very positive that copper-plate printing is used as the general term without reference to the metal. The defendants rely principally upon the testimony of Bacon in opposition to these witnesses. It is for you to decide upon this evidence. I shall merely observe that it lies upon the plaintiff to satisfy your minds on this subject. Apparently, the two species of engravings are different; and besides this, the expressions in the specification are those of the plaintiff, and it therefore behoves him to explain and to clear them of ambiguity.

Secondly. It is contended by the plaintiff's counsel, that even if copper-plate does not include steel plate printing; still the use of the latter by the defendants, applied to bank notes, to produce the effect stated in the patent, is a mere evasion, and is virtually an infringement of his right. Without admitting or denying this argument, because it is unnecessary to do either, the court feels no difficulty in saying, that if the use of steel plates be an improvement upon printing from copper plates, for which a patent might have been obtained by the inventor, the use of the former by the defendants, can with no propriety be considered as an infringement of the plaintiff's right, unless it has appeared that they have also used the plaintiff's improvement. The witnesses seem all to concur in the opinion that the improvement is considerable. Should the opinion of the jury be unfavourable to the defendants upon the first point, objections of a nature purely legal are then made to the plaintiff's right of recovery. It is contended that the patent is invalid, 1. Because it is for a thing not patentable under the act of congress; 2. Because the specifica-

tion is ambiguous; and 3. Because the patent is broader than the invention. But a preliminary question must be settled before the merits of these objections can be decided upon; and that is, can these defences be made under the general issue, merely?

We agree with the defendants' counsel, that they may give in evidence the act of congress without notice. But this permission does not allow evidence of special matter to be given, other than such as is mentioned in the sixth section; unless it can be admitted upon general principles of law as included in the general issue. The permission so frequently met with in statutes, to the defendant to plead the general issue, and to give the statute in evidence; extends no farther than to exempt the defendant from the necessity of pleading the statute specially; which, where it is of a private nature, it would otherwise be necessary to do. But it extends no farther; and as the question, whether a particular statute be of a public or private nature, is not always of easy solution; this permission is not unfrequently provided from abundant caution. It has been decided, upon general principles, that certain matters of a special nature, other than those enumerated in the sixth section, may be given in evidence under the general issue; such as alienage in the plaintiff, and a license by him to use the patented invention. With these decisions we agree, and they show that mere surprise on the plaintiff forms no objection to such evidence, since the plaintiff might not suspect that such would be the nature of the defence.

We come now to the particular objections before noticed.

1. Can the defendants, upon the general issue, insist that the plaintiff's discovery is one for which a patent could not be granted? This question may at once be answered by the solution of another. Is this a discovery of an art, machine, &c. or of an improvement in any art, machine, &c. If it be either, then it is the subject of a patent by the express words of the act of congress. What is the discovery for which this patent was granted? Printing with copper-plates on the reverse face of bank notes, &c. And can it be contended that this is not an art? Is not every species of printing an art? But it is contended that printing, either with types, or copper-plate, is not new; but had been, long previous to plaintiff's invention, in common use; and, as applied to bank notes for the purpose professed in the patent, that it is not useful. In answer to the first of these objections, it is conclusive to observe that the court and jury cannot judicially take notice of it, because it is precisely that kind of defence of which the plaintiff was entitled to notice. If the defendants, instead of pleading that matter specially, chose to avail themselves of the permission given by the sixth section of the act, to plead the general issue, they should have given notice to the plaintiff that they should give such matter in evidence.

2. To the second objection, it may be observed generally, that it is always difficult to prove the entire worthlessness of any discovery, or of any article susceptible of use. If the plaintiff's invention correspond substantially with the thing used by the defendants, how can the latter be permitted to say, that the thing so discovered and used is worthless? In the case of Lowell v. Lewis [Case No. 8,568], Mr. Justice Story, commenting upon this subject, lays it down, that the law only requires that the invention should not be frivolous or injurious to the well being, good policy, and sound morals of society. "The word 'useful,' therefore," he adds, "is incorporated into the act, in contradiction to mischievous, or immoral." Now can it be urged that this definition is at all applicable to the plaintiff's invention? Let this question be answered by the witnesses in this cause. Those for the plaintiff agree that the invention is a security against the counterfeiting of the notes, and even Mr. Wilson, the witness most relied upon by the defendants, concurs in the same opinion, where the middle part of the plate is used, as it appears to have been by the defendants.

3. Another objection under this head made to the patent is, that it is for an effect only. But this is a mistake. The patent, as explained by the specification, is for copper-plate, or copper-plate and type printing on bank notes, for the purpose of producing a particular effect, viz. security against counterfeits. The patent is not for the effect, but for the kind of printing by which that effect is produced.

The next objection to the validity of the patent is founded on certain alleged defects in the specification; and the first inquiry is, can any, and what defects in this instrument be relied on as a defence under the general issue? It is perfectly clear that the two enumerated in the sixth section of the act, cannot be set up at the trial, unless due notice has been given to the plaintiff; these are, that the specification does not contain the whole truth relative to the discovery; or that it contains more than is necessary to produce the described effect, and this, with a view to deceive the public.

But are there no other objections to the patent in relation to the specification, which may be urged under the general issue without notice? Suppose there be no specification at all; would not this be such a defect in the plaintiff's title, apparent upon the face of the patent itself, as to turn him out of court, upon a plea which merely puts that title in issue? We strongly incline to think that it would be. The third section requires that a written description of the invention, &c. should be delivered before the inventor can receive a patent. Has the secretary of state any authority to issue the patent, unless this pre-requisite be complied with? We think not; and if this con-

clusion be correct, it follows that the patent, which is the only evidence of the plaintiff's title, is invalid. Without the specification, there would, in most cases, be a total failure of the consideration for which the monopoly is granted; as no person could guard himself against an infringement of the patent while it continues in force, or be enabled to use the invention after its termination. The same reason would seem applicable to a specification altogether ambiguous and unintelligible; because the same section requires not only a specification, but that it should be expressed in terms full, clear, and exact. If the defendant cannot, under the general issue, object to such a specification, I do not perceive in what other way he could avail himself of it, as it is not one of the cases provided for by the sixth section; nor do I see how it could well be made the subject of a special plea.

Before I take leave of the question, what defence may be made under the general issue without notice, it may be proper to refer to some others which are of frequent occurrence. Such as that the patent is broader than the discovery; that it is for an improvement which the specification does not so particularly describe as to distinguish it from the original invention; that the suggestions of the petition are not recited in the patent; and perhaps others similar in principle.

We come now to the inquiry whether the specification in this case is chargeable with the defects imputed to it. These are: First, that it speaks of printing copper-plates. The answer to this objection is, that the term printing is an error of expression apparent on the face, both of the patent and specification, by which no person could be misled. The first describes the invention to be an improvement in printing on the reverse face of bank notes; and the latter, when it describes the nature of the plaintiff's claim, speaks of printing copper-plate. The next objection to the specification is, the omission to describe the mode of printing letter press, which, it is contended, was as necessary, as it was to describe the mode of copper-plate printing. It may safely be admitted that the one was as necessary as the other; but it is very clear that neither was so, as both modes of printing are well known by persons acquainted with copper-plate and type printing, and of course, neither required a description. The last objection made to the patent is, that the description of the rolling press, given in the specification, makes it part of the thing granted, and, consequently, the patent is broader than the invention, which, it is not pretended. extends to the rolling press. It is very true that the specification, with unnecessary minuteness, describes the rolling press, which is always used in copper-plate printing. and also the modus operandi. But then it concludes by declaring for what it is the plaintiff claims a patent, and this claim has no reference to the press. The last objection made to the plaintiff's right of recovery is, that his action will not lie against a corporation. No cases were cited by the counsel in support of this objection, and we have had no opportunity to refer to any. The general rule certainly is, that corporations are not liable to be sued in actions of tort; but it by no means follows, that they may not be sued in actions on the case for injuries done to the rights of others, notwithstanding the plea is not guilty. We incline strongly to the opinion, that where a corporate body, acting in that character, directs an act to be done, which infringes the right of another, they may be sued in this form of action; and in this case we shall so decide. If the jury should find a verdict for the plaintiff, the only remaining inquiry for them will be as to the damages. The act of congress has provided a general rule for their government, from which they cannot depart; but its application to the particular case is frequently difficult and embarrassing. The plaintiff is entitled to be compensated for the damages he has sustained by the infringement of his right. What that is, it will not be easy for the jury to estimate, as no evidence upon that subject has been given to them. For it should be noticed, that all the evidence applicable to this subject, relates to the bills used by the defendants. As to the plaintiff's invention, neither the plates nor any impressions from them, have been laid before the jury. All that you can know is, that the defendants have issued bank notes with steel plate printing on the backs of them, as a security against counterfeits. But what the particular device intended by the plaintiff is, or how far it is calculated to produce the same result with that used by the defendants, cannot be easily perceived by the jury. Wilson stated that he considered the impression made with the middle piece, to be a security against counterfeiting the notes; but without it, a mere impression on the back of the notes was, in his opinion, of no use.

Verdict for three cents damages.

[A rule to show cause why judgment should not be entered without costs was made absolute in Case No. 7,876.]