## INTERNATIONAL CORK CO. v. NEW PROCESS CORK CO.

(District Court, E. D. New York. November 9, 1923.)

Patents ☞328—Alberti, No. 1,234,109, for process of making bottle closures, and No. 1,234,711, for closures, held void for lack of invention.

    The Alberti patents, No. 1,234,109, claims 1–6, for process of making bottle closures, the essential feature of which consists in interposing between the shell and sealing disk an adhesive albuminous substance and subjecting to heat to set the same, and No. 1,234,711, claims 1–5, for a closure for receptacles made by the same process, both *held* void for lack of invention.

In Equity. Suit by the International Cork Company against the New Process Cork Company. Decree for defendant.

Newell & Spencer, of New York City (Emerson R. Newell, of New York City, of counsel), for plaintiff.

Henry J. Lucke, of New York City (J. Edgar Bull, of New York City, of counsel), for defendant.

CAMPBELL, District Judge. This is a patent suit, brought by the plaintiff for the alleged infringement of two patents issued by the United States Patent Office to John Alberti, assignor to International Cork Company, the first number, 1,234,109, being for process of manufacturing bottle closures, dated July 24, 1917, and the second number, 1,234,711, for closure for receptacles, dated July 31, 1917. The answer is invalidity and noninfringement.

The plaintiff bases this action on claims 1 to 6, both inclusive, of the first patent, No. 1,234,109, which reads as follows:

"1. In a process for the manufacture of bottle closures of the cap variety, which consists in, first, interposing between the sealing disk and the coincident surfaces of the metal cap co-operating therewith a suitable cementing medium adapted to be coagulated by heat; second, placing the closure under appropriate pressure; and, third, subjecting the closure to heat for properly coagulating said cementing medium.

"2. In a process for the manufacture of bottle closures of the cap variety, which consists in, first, interposing between the sealing disk and the coincident surfaces of the metal cap co-operating therewith a suitable cementing medium adapted to be coagulated by heat; and, second, heating the closure for properly coagulating the said cementing medium and in the meantime placing the closure under appropriate pressure.

"3. In a process for the manufacture of bottle closures of the cap variety, which consists in, first, interposing between the sealing disk and the coincident surfaces of the metal cap co-operating therewith a suitable cementing medium adapted to be coagulated by heat; and, second, heating the closure under pressure.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"4. In a process for the manufacture of bottle closures of the cap variety, which consists in, first, interposing between the sealing disk and the coincident surfaces of the metal cap co-operating therewith a suitable cementing medium adapted to be coagulated and rendered insoluble by heat; second, placing the closure under appropriate pressure; and, third, subjecting the closure to heat for properly coagulating and rendering insoluble said cementing medium.

"5. In the art of making closures comprising a shell and a sealing disk, the process which consists in interposing between the shell and sealing disk a sticking material comprising an adhesive albuminous substance, and subjecting said material to heat to set the same, whereby the shell and sealing disk are united.

"6. In the art of making closures comprising a shell and a sealing disk, the process which consists in interposing between the shell and sealing disk a sticking material comprising an adhesive albuminous substance, maintaining the parts under pressure and subjecting said material to heat to set the same,"

and claims 1 to 5, both inclusive, of the second patent, No. 1,234,711, which read as follows:

"1. A closure for receptacles comprising a metallic cap, a sealing disk, and an interposed heat-coagulated cementing medium .

"2. A closure for receptacles comprising a metallic cap, a sealing disk, and an interposed cementing medium coagulated and rendered insoluble by heat.

"3. A closure for receptacles comprising a metallic cap, a sealing disk, or packing of cork or the like, and an interposed cementing medium composed of heat-coagulated albuminous substance.

"4. A closure for receptacles comprising a metallic cap, a sealing disk, and an interposed liquid cementing medium rendered insoluble by heat.

"5. A closure for receptacles comprising a metallic cap, a sealing disk, and an interposed cementing medium rendered insoluble by heat."

The first question which naturally attracts our attention is as to the prior state of the art. Defendant offered in evidence the following books:

Chemistry of the Albumens, Schryver, 1906; Glues and Gelatine, Fernbach, 1907; and Cements, Pastes, Glues, and Gums, Standage, 1904—from which it appears that glue with some form of albumen and water as constituents was well known to the art prior to the alleged date of discovery and invention by Alberti, and it was also well known prior to that time that to facilitate solution and harden or prevent putrefaction or both some alkali should be admixed.

Defendant also offers in evidence the following patents:

The Serra United States patent, No. 846,251, dated March 5, 1907, discloses a new article, artificial cork, and the method of making the same by reducing the cork to granular form, removing the damaged or impure parts, and bleaching, and then the patent provides (page 1, lines 70–72):

"After the cork granules have been purified and bleached I then mix with the granules a solution of albumen."

The patent also shows the availability of the product due to certain characteristics of the binding material, as follows (page 1, lines 92–96):

"As the binding material after coagulation is inodorous, tasteless, and insoluble, the new product obtained can be used for any of the purposes for which the natural cork is used and for many more."

The Wittkowsky British patent, No. 8,347, dated July 4, 1891, discloses a cement made of casein, water glass, and lime to unite pieces

of wood by the aid of pressure and heat. The patentee in said patent defines albuminous matters as follows (page 2, lines 52–55):

"For the sake of definition I mention, that albuminous matters are casein, fibrine and albumen proper, which for sake of economy may be employed in unpurified state; for instance, also, ox blood may be taken, which represents a rather concentrated solution of albumen."

The Cochran United States patent, No. 956,887, dated May 3, 1910, discloses a machine for making bottle caps, and describes its operation as follows (page 3, lines 28–44):

"It will be observed that with the machine shown in the drawings there are four operations performed simultaneously, though in sequence, upon any one particular cap or crown except that the imprinting upon the visible face of the crown occurs simultaneously with the forming of the crown. When the stem *3* and head *4* are depressed then the arm *51* and the levers *5*, *6*, and *7* all move together, the movement of the arm *51* causing the inking of the ejector head of a die, the arm *5* causing the movement of the cutting and forming punch, the arm *6* causing the deposition of some cement in the formed bottle crown, and the arm *7* causing the forcing of a cork disk into the already cemented crown."

While there is no specific provision for the use of albumen as the cementing medium in this machine, it does provide means for the spreading of any suitable glue, in the form of a solution, in the metal cap before the cork disk is delivered and pressure is applied.

The Painter United States patent, No. 792,284, dated June 13, 1905, discloses a method of manufacturing bottle closures, described therein as follows (page 1, lines 47–60):

"Broadly stated, my novel method or process consists, first, in interposing a suitable fusible protecting and binding medium between the packing or sealing disks or gaskets and the coincident inner surfaces of the metal co-operating therewith and of which the crown caps are composed; secondly, while the caps, disks, and fusible binding medium are properly heated for fusing said medium subjecting the whole to appropriate pressure; and, thirdly, while still heated and the packing held under controlling pressure hardening the binding medium or permitting it to harden by cooling it, the disk, and cap."

The Painter United States patent, No. 792,285, dated June 13, 1905, discloses a metallic sealing cap or closure, and method of producing the same, and after providing for applying a suitable fusible protecting and adhesive material, so that the interior metallic surface of the cup is amply coated, and providing for the cork disks, the patent provides as follows (page 1, lines 73–88):

"The next step in my present method or process is to subject the metal cap and said cork disk, duly placed therein, to such a temperature as will melt or fuse the protecting and adhesive medium on the interior metallic surface and in the meantime apply such pressure as will compress the disk and force it into close relations with or to the cap and maintain such compression thereafter for assuring reliable and close union of the metal and cork and until the adhesive medium has properly cooled, and so, also, until the compressed disk, with its contained paraffin, has become substantially fixed or set in its compressed condition for service."

The patent also provides that a paper collet may be used, if desired, and shellac in grain alcohol solution of consistence of common varnishes is recommended for the interior coating.

The Jones United States patent, No. 1,110,138, dated September 8, 1914 (application filed October 16, 1909), discloses a vessel seal, and its object is best described in the words of the patent (page 1, lines 18–54):

"The main object of the invention is to provide a device of this description having a metal or equivalent stiff cap adapted to engage the neck of a bottle or similar article and a sealing layer formed therein. This sealing layer may be of any material suitable for the purpose, either a single substance or a combination of two or more substances, and said substance or combination should be sufficiently plastic to permit its being formed or molded within said cap. When the sealing layer is composed of small particles of material united by a binder, as will usually be the case, the composition will be fed into the caps, formed or molded therein, subjected to pressure, and the binder set while the composition is under compression. Said composition is generally made up of particles of granules of cork coated with a binder. This composition is fed into metal shells, held under compression to form a sealing layer or disk, and the binder then set, in which case the sealing layer formed in said cap is a substantially homogeneous but soft, elastic and readily compressible body of solid gas-tight cork made up of granules permanently united by thin coatings of a binder that is substantially neutral in the presence of water, beer, and similar beverages under all ordinary conditions of bottling, pasteurization, and use, and capable of withstanding the temperature of pasteurization without being dissolved, disintegrated, or distorted thereby, and substantially incapable of shrinkage under any ordinary conditions of temperature or use."

The binder referred to particularly is a solution of rubber which under the action of heat and pressure is vulcanized; that is, set or hardened. The paper collet is omitted, and the formation of the seal by the molding of the composition directly in the cap is commended as being better than cementing in a cork disk (page 2, lines 12–22):

"A unitary seal as herein described possesses many advantages over the ordinary closure or any seal having the cap and the sealing layer made as separate articles requiring assembling. It is more effective, owing to the nonporous character of the formed sealing layer, and also because of the certainty that said sealing layer will be positively held in the cap, which is not the case with the loose or slightly cemented-in cork disk."

This is the patent to which Mr. McManus frequently referred in his testimony.

The Gardner British patent, No. 21,774, dated June 19, 1897, discloses a glue made of albumens and alkali substances coagulated by heat (page 1, lines 11–16):

"All albumens possess towards alkalic substances the character of an acid because they unite and form salts; i. e., double salts. All such formations possess the character of glues for fastening wooden surfaces together and may therefore be used for waterproof gluing purposes and according as the glue—consisting of (1) an albuminate; and (2) alkalic substances—is possessed of a surplus of one or of the other of these, so the qualities of this glue and the use it has to be put to will differ."

"If the glue is possessed of only little alkalic substance in comparison with the albuminate, the change only into a gelatinous state at an ordinary temperature only takes place very slowly or not at all, the change can, however, be expedited if heat be applied to it from the outside. The temperature that is required to effect this is proportionately higher, the smaller the quantity of alkalic substance there is in the glue, and nears the temperature at what the pure albumen coagulates." Page 1, lines 28–33.

The Plinatus United States patent, No. 925,233, dated June 15, 1909, discloses a method of sealing fruit cans and the like, as follows (page 1, lines 30–42):

"Now, this improved method consists essentially in the joint being made, partly by mechanical means (for instance, by the elasticity of the joint making material or by the use of pressure), and partly by a chemical process, in which by the heating of the tins albuminous substances are caused to coagulate. By this coagulation and in consequence of the increase of volume thereby resulting, the joint-making material completely fills up the space between the top or closure and the top of the can, thus forming a permanent hermetic joint."

The cement used is described (page 1, lines 103–108):

"For this purpose white of egg, blood, or egg albumen, or a suitable mixture of these substances, may be employed. Casein is also adapted for the impregnation either alone or mixed with the above mentioned substances."

The durability of the cement is described (page 2, lines 26–34):

"The albumen present in the material changes its chemical condition by coagulation when heated, and by reason of its change of volume, and also by reason of a certain degree of elasticity, and also by reason of its adhesive power makes a sure joint for the tin, all the pores being filled up. The joint is extraordinarily durable, and greatly excels joints formed by caoutchouc."

In this patent the albumen cement is used, with or without washers, to seal the joints of preserved food tins.

The Baekeland United States patent, No. 957,137, dated May 3, 1910, discloses a container for food products, coated on the inside with the so-called insoluble, infusible condensation products of phenols and formaldehyde.

The Baekeland United States patent, No. 1,019,407, dated March 5, 1912, discloses a method of uniting objects, and provides (page 1, lines 11–17):

"As a cement or adhesive material for cementing, joining or uniting objects or articles of a suitable nature, as, for example, glass, wood, metal, pottery, stone, leather, etc., and as a filling material for cracks, cavities, or the like in these or other materials."

It also provides the method of application (page 2, lines 31–40):

"In uniting objects the surfaces to be joined are first coated with the cement prepared by any of the methods indicated above, and the surfaces are then pressed or assembled in the proper relation and retained in such position until the cement has been transformed, usually by the application of heat or of heat and pressure, into the insoluble, infusible, condensation product."

It was because of this patent that the plaintiff filed the disclaimer, in which it disclaimed as to the patent in suit, No. 1,234,711:

"(1) All cementing or sticking materials in the combinations of elements therein claimed, except those which are set by heat; and

"(2) All closures for receptacles comprising a metallic cap and a sealing disk cemented thereto by any of the phenol products disclosed in the Baekeland United States patent, No. 1,019,407, dated March 5, 1912."

The effect of this disclaimer is to limit the claims of the plaintiff's patent, therein described, and therefore this patent is considered with the prior art.

The Dunham United States patent, No. 695,198, dated March 11, 1902, discloses insoluble casein and process of producing same; the desire being to render it insoluble and of such a character that it may be used in the arts as a substitute for egg or blood albumen. The patentee shows the addition of hexamethylene-tetramine as a substitute for formaldehyde.

From my examination of the prior art, I find that glue made of albumen and water was well known to the art, as was the fact that an alkali should be admixed therewith to facilitate solution and harden or prevent putrefaction long before the date of the alleged invention represented by the patents in suit, and also that such glue could be used in the manufacture of composition cork and in sealing tin cans for food products. It also appears that metal-capped bottles were old to the art long before the date of the alleged invention of Mr. Alberti, and it was customary to secure by glue or cement to the interior of the cap a disk of cork or other like substance, either with or without a paper collet, and that in affixing such disk heat and pressure were used.

It therefore appears that the patentee, in the patents in suit, has simply substituted a different glue, albumen, and water, which is set, hardened, or coagulated by heat with the use of pressure, in place of some other adhesive or cementing medium, and this is the sole alleged invention. The patents in suit give no formula; the only description for compounding the albumen and water being (patent in suit, No. 1,-234,109, page 2, lines 63–68):

"Certain proteids or substances made up partly of proteids, such as albumen or blood, may be used for the purpose at hand, the same being coagulated and rendered insoluble by heat. Albumen has been found to be particularly adapted for carrying out the present process, it being inodorous, tasteless, soluble in water before use, and coagulates at 140° Fahrenheit."

Patent in suit, No. 1,234,711, lines 60–68:

"Certain proteids or substances made up partly of proteids, such as albumen or blood, may be used for the purpose at hand, the same being coagulated and rendered insoluble by heat. Albumen has been found to be particularly adapted for use in connection with the present invention, it being inodorous, tasteless, soluble in water before use, and coagulates at 140° Fahrenheit."

It would therefore seem to me that, without a knowledge of the proper method of compounding albumen and water to form the adhesive cementing medium, if it could be gained from the prior art, the disclosures of the patents in suit would be valueless to one learned in the art, except as a point from which to start experimenting to find the proper method of compounding it; but, if the disclosures are sufficient, then in both the Serra and Plinatus patents, supra, an albumen cement is as completely disclosed as in the patents in suit, and these patents long antedated the patents in suit, and were for analogous subjects, as the Serra patent was for making artificial cork, the Plinatus patent for sealing metal fruit cans, and the plaintiff's patents for metal bottle caps having a cork disk cemented in the interior.

If the claim is made that the disclosures as to the composition and use of the albumen cement in the Serra and Plinatus patents were not

sufficient to instruct one learned in the art how to prepare and use the same, then the patents in suit are valueless for the same reason, as the disclosures in said patents as to the composition and use of the albumen cement are no more specific or complete than in said Serra and Plinatus patents, supra. It is also noticeable that Serra, long before the date of the alleged invention, disclosed in the patents in suit, found the important characteristic of albumen which adapted it to use, and described the same (Serra patent, No. 849,251, page 1, lines 92–96):

"As the binding material after coagulation is inodorous, tasteless, and insoluble, the new product obtained can be used for any of the purposes for which the natural cork is used, and for many more,"

and that Alberti in his patents in suit described the same characteristic (patent in suit, No. 1,234,109, page 2, lines 66–70):

"Albumen has been found to be particularly adapted for carrying out the present process; it being inodorous, tasteless, soluble in water before use, and coagulates at 140° Fahrenheit."

Patent in suit No. 1,234,711, page 2, lines 64–68:

"Albumen has been found to be particularly adapted for use in connection with the present invention; it being inodorous, tasteless, soluble in water before use, and coagulates at 140° Fahrenheit."

The disclosures of the Plinatus patent, supra, as to the use of albuminous cement are threefold: (1) for the purpose for which Serra used the same; (2) for gluing the washer to tin surfaces, which is exactly the purpose for which Alberti, the patentee of the patents in suit, uses the same when he glues the cork disk to the metal bottle cap; and (3) for gluing together two tin surfaces when washers are not employed.

In the patents in suit, there is interposed between the sealing disk and the coincident surface of the metal cap co-operating therewith a proper cement, then the closure is placed under appropriate pressure and heat is applied, and the prior art discloses that the time of the use of pressure and the application of heat was determined by the character of the cementing or adhesive material used. If it be true that the function of heat when an albuminous substance is used is different than when a resinous cement or an india rubber cement is used, which I do not think it necessary to decide, then both Serra and Plinatus described the function of heat in coagulating an albuminous cement long before the date of the alleged invention in the patents in suit, and therefore it was not discovered by Alberti.

Alberti surely did not discover the use of pressure in gluing operations, because not only is it shown in the prior art by Serra, Plinatus, and others, but our own experience teaches us that pressure is applied in every sealing operation where feasible. The difference in phraseology between claims 1 to 6, both inclusive, of the process patent in suit, No. 1,234,109, is immaterial, as the only cementing medium "adapted to be coagulated by heat," with which we have to deal, is an "adhesive albuminous substance," and by reason of the disclaimer filed by the plaintiff, supra, the term "coagulate" and cognate terms is legally defined as to harden, stiffen, or solidify.

In my opinion the process disclosed in the said patent in suit, No. 1,234,109, differs in no substantial respect from the process disclosed in the prior art, and all that Alberti can claim is that he was the first to use this old albuminous cement in attaching cork disks to bottle stopper caps, and even this claim is doubtful as I am convinced that McManus used albumen cement far this purpose before Alberti; but, even if he did not, I do not believe *that act of Alberti* constituted invention. The cement was well known to the prior art, and had been put to analogous use by Serra and Plinatus, and therefore it was natural for Alberti to select and adapt it for his purpose.

Mr. Alberti says his cement was composed only of albumen and water, and if the selection of this cement for the purpose set forth in the patent constituted invention, then it seems to me that any one who selected different constituents to form a cement would also be an inventor, and not an infringer of the patent in suit, and this would apply to the defendant, who uses a cement composed of six or seven constituents, one of which is albumen and another of which is water. I cannot find this to be patentable invention. Hotchkiss v. Greenwood, 11 How. 248, 13 L. Ed. 683.

I am unable to find that the patentee in said process patent in suit, No. 1,234,109, contributed anything to the art beyond what was well known long prior to the date of the alleged invention in said patent in suit, and therefore nothing was disclosed in claims 1 to 6, both inclusive, of said patent No. 1,234,109, which may be made the basis of any valid patent. The Incandescent Lamp Patent, 159 U. S. 465, 16 Sup. Ct. 75, 40 L. Ed. 221.

Claims 1, 2, and 3 of the closure patent in suit, No. 1,234,711, differ slightly in phraseology, but do not differ in substance. Claim 1 calls for a "heat-coagulated cementing medium"; claim 2 calls for a "cementing medium coagulated and rendered insoluble by heat"; and claim 3 calls for a "heat-coagulated albuminous substance." These claims differ from the prior art only in the fact that Alberti used the old and well-known albuminous cement in attaching the cork disk to the metal cap, instead of some other suitable kind of cement used by others or disclosed in the prior art; and, as I have hereinbefore held, I am of the opinion that the selection by Alberti of an old and well-known cement was a matter of choice or selection and did not constitute invention.

Claims 4 and 5 of said patent in suit, No. 1,234,711, call for a "cementing medium rendered insoluble by heat," and these claims are anticipated by the Jones patent, No. 1,110,138, because the india rubber cement therein described is in the act of vulcanization, as called for in said patent, rendered insoluble by heat.

A decree may be entered in favor of the defendant against the plaintiff, dismissing the plaintiff's bill of complaint, with costs.