**CHICAGO FORGING & MANUFACTURING CO. v. BASSICK CO.**

No. 1958.

District Court, D. Connecticut.

July 15, 1932.

Donald M. Carter, of Chicago, Ill., for plaintiff.

Stephen H. Philbin, of New York City, and D. Lewis Mattern, of Bridgeport, Conn., for defendant.

THOMAS, District Judge.

This is a patent suit. The bill charges the defendant with infringement of two patents which are for improvements in hood latches which are used on both sides of an automobile hood for the purpose of holding the hood securely fastened to the deck or plate on the frame of the car, or to release the latches so as to enable one to lift the hood when necessary.

The first patent is No. 1,609,165, and was issued to Charles B. Gilmore on November 30, 1926, on an application filed August 25, 1925; and the second, also issued to Gilmore, is numbered 1,661,891, and was issued on March 6, 1928, on an application filed March 24, 1926. Both patents have been assigned to the plaintiff.

As to the first patent, the plaintiff relies upon claims 11 and 12. They read:

"11. An automobile hood latch comprising a latch body, a latch member thereon adapted to engage the hood, yielding means normally moving said latch member in one direction, and means for lifting it in the opposite direction, comprising a finger ring positioned upon it and a finger engaging lip projecting therefrom.

"12. An automobile hood latch comprising a latch body, a latch member thereon adapted to engage the hood, yielding means normally moving said latch member in one direction, and means for lifting it in the opposite direction, comprising a plurality of finger engaging elements vertically aligned along said latch member."

The invention described in the patent relates to an automobile hood latch of the type which is composed of a cylinder which is slidably mounted on a pin which is connected to the automobile frame and preferably by a universal joint. The cylinder has a cam portion adapted to engage a hook element on the automobile hood so as to hold the hood down as pressure is applied to the cylinder by a spring which is coiled around the pin within the cylinder. Means are provided on the cylinder for moving or lifting it in a direction opposite to that in which the spring acts.

Hood latches of this general type were old and well known many years prior to the date on which the application for the first patent in suit was filed, as is shown, for example, in patent No. 1,100,292, issued on June 16, 1914, to J. F. Duryea, and in patent No. 1,312,078, granted on August 5, 1919, to G. W. Kerr et al.

The alleged novelty of the device defined in claims 11 and 12 of the first patent in suit resides in the specific construction of the means for moving or lifting the latch cylinder in a direction opposite to that in which the spring of the structure acts, and this means is a finger ring structure which is positioned upon the latch cylinder as well as a finger engaging lip projecting from the cylinder. Claim 11 specifies: "A finger ring

positioned upon it (the latch cylinder) and a finger engaging lip projecting therefrom."

Claim 12 specifies: "A plurality of finger engaging elements vertically aligned along said latch member (the cylinder)."

The patentee sets forth the purpose of this construction on page 1, line 106 et seq., of his specification in the following language: "When the latch is again to be used, the hood is closed, the fore finger is passed through the ring G, the second finger engages the lower portion of the ring and the lip $G^1$ and the entire latch is easily lifted, the fingers being spaced away from danger's proximity to the opposed hooks and cams."

The feature of projecting fingers "from danger's proximity to the opposed hooks and cams" is shown in the Kerr et al. patent, supra. The handle 11 of the Kerr et al. construction which is in the form of a finger ring prevents contact of the finger or fingers with the automobile hood, so that the alleged novelty of the invention defined by claims 11 and 12 of the patent in suit narrows down to a latch cylinder lifting device provided with two finger grips which are arranged in vertical alignment and prevent engagement of the fingers with the automobile hood. Double finger grips per se were known prior to Gilmore's invention, as will be seen from an examination of either the Cummins' patent, No. 1,398,319, issued November 29, 1921, or the Bassick patent, No. 1,462,447, issued on July 24, 1923. Therefore the question is whether it amounts to invention to mount the finger engaging lip $G^1$ of Gilmore on the latch cylinder of Kerr et al.

It appears from the evidence adduced that the plaintiff attributes to the finger grip of the first patent in suit the virtue of having two finger rings instead of one, and points out that it is easier to lift a latch under heavy spring tension with two fingers than it is with one finger. In other words, Gilmore modified the Kerr et al. structure by adding to it an element, to wit, the finger lip $G^1$, and for an obvious purpose, and such as I think, as would occur to any skilled mechanic. It is well settled that, unless more ingenuity and skill are required in duplicating the parts of a device than are possessed by an ordinary mechanic acquainted with the business, there is an absence of that degree of skill and ingenuity which constitutes essential elements of every invention. In other words, the improvement is the work of the skilled mechanic and not that of the inventor. Hotchkiss v. Greenwood et al., 11

How. 248, 13 L. Ed. 683. It follows, therefore, that claims 11 and 12 of the first patent are invalid for lack of invention.

### Patent No. 1,661,891.

Claims 18, 19, and 20 are relied upon and they read:

"18. In combination with a closure a latch assembly including a latch member and a base to which it is secured, said base being mounted adjacent the closure, and means, including a spring associated directly with the latch assembly, adapted to withdraw said latch member, when released, outwardly from the closure and to hold it withdrawn, and means for limiting such withdrawal to a predetermined position.

"19. In combination with a closure, a latch assembly including a latch member and a base to which it is secured, said base being mounted adjacent the closure, and means including a spring associated directly with the latch assembly and an abutment member, between latch and base, adapted to withdraw said latch member, when released, outwardly from the closure and to hold it withdrawn, and means for limiting such withdrawal to a predetermined position.

"20. In combination with a closure, a latch assembly including a latch member and a base to which it is secured, said base being mounted adjacent the closure, and means, including a spring associated directly with the latch assembly adapted to withdraw said latch member, when released, outwardly from the closure and to hold it withdrawn, the latch member and base being provided with opposed contacting surfaces adapted, in response to the action of said spring, to hold said latch in outwardly tilted position away from said closure and out of the normal line of movement thereof."

The invention described in this patent also relates to automobile hook latches and generally of the type described in the first patent. The improvement defined by the three claims in suit consists in causing the latch, when released from the hood under spring tension to fall away from the hood and to assume a predetermined position and to be held automatically in that position. In other words, the latch, when released, will be held out of the path of movement of the hood when the hood is either lifted or lowered. For this purpose the construction shown in figures 1 to 6, inclusive, of the patent is provided on its base $C^2$ with an upwardly projecting flange $C^9$ along the inner edge of its top portion. In the construction illustrated in figures 7 to 9, inclusive, the latch cylinder D has attached at the end near the base a downwardly projecting lug K. When the latch is disconnected from the hood and released, the spring in the cylinder forces the latter downwardly against the base. The flange $C^9$ or the lug K, as the case may be, causes a tilting outwardly, under spring tension, of the latch cylinder and the parts connected therewith, so that the cylinder takes a predetermined position at an angle and away from the hood and remains in that position. In other words, the latch is automatically removed from the path of the hood when it is withdrawn from locking position.

The advantage of this automatic withdrawing of the latch to maintain it in predetermined position is obvious. Every one familiar with the operation of automobiles knows that the hood is frequently raised and lowered for many purposes. If the latch can fall forward, obviously it will be under the hood when the hood is moved toward closing position, and the operator is then required to lift the hood up again and move the latch out of the way and then lower the hood to closing position. Even though the latch, when released, does not fall under the hood, a brush of the sleeve or a touch of the hand of the operator may move it under the hood and will cause the annoyance resulting from again lifting the hood and moving the hood latch, and in addition there is danger of damaging the hood or the latch, or both, from the blow as the hood is moved down on the latch. Furthermore, if the latch is adapted to fall easily from the hood, it is apt to strike the highly finished surface of the mudguards or fenders and in time mar the highly polished surfaces. The latch described and claimed in the patent in suit prevents such difficulties. In addition, the latch may fall around in any direction and so not be in proper position to be grasped by the operator when he desires to fasten the hood down, and then it becomes necessary for him to locate it and turn it to proper position. This difficulty is likewise avoided by the patented latch, as it is always in a predetermined position when released, as it stands at an angle and upright and ready to be grasped by the operator without any difficulty and without any searching or moving, and can therefore be easily and quickly moved into locking position in engagement with the hood.

The defenses are: A. Invalidity of the claims in suit because, as is alleged, they are not based upon the original disclosure.

B. Invalidity of the claims in suit because of the prior art. C. Invalidity of the claims in suit because of the prior use.

## A. The Original Disclosure.

Defendant contends that there was not a word in the application, as filed, with respect to the spring forcing the latch cylinder either against the flange C⁹ or against the base, or with respect to "a predetermined position," and that there was no claim in the original application to this feature. Defendant further argues that the drawings show an arrangement by which, entirely independent of any spring tension, the latch would fall outwardly because of the flange C⁹ of Fig. 2 or the lug K of Fig. 7.

These claims are without merit, as it appears from page 2, line 126 et seq., of the specification, that the inventor says: "In order to hold the latch normally withdrawn when the closure is released I position an upwardly projecting flange C⁹ on the base member C², or a downwardly depending member K on the latch cylinder, as shown in Fig. 7. Thus when the latch is released, the spiral spring thrusts it downwardly along the stem C and in either form the engagement of the member C⁹ or K with the base or the cylinder respectively is sufficient to cause the latch to fall outwardly away from the closure."

■■ This passage was part of the specification as originally filed, and is sufficient to support the supplementary passages inserted into the specification by the amendments subsequently made by the applicant, as it is obvious from the drawings which had not been altered and from the specification as originally filed that the latch cylinder and the parts connected therewith are forced by the spring against the base, tilted, and held in predetermined position by the cylinder spring. The rules of the Patent Office and the decisions of the courts permit either a correction of the drawings or an amendment to the specification when one supports the other. Neither the rules of the Patent Office nor the law prevents insertion of claims during the prosecution of a patent application which are clearly readable on the disclosure, at any time while the application for a patent is pending, provided a supplemental oath is filed setting forth the fact that the invention claimed by the additional claims (a) was part of applicant's invention; (b) was invented before he filed the original application; (c) was not known or used before his invention; (d) was not patented or described in a printed publication in any country more than two years before his application; (e) was not patented in a foreign country on an application filed more than twelve months before his application; (f) was not in public use or on sale in the United States for more than two years before the date of his invention; and (g) has not been abandoned. Gilmore, the patentee, complied with all the conditions imposed by the rules of the Patent Office as well as by the law as found in the decisions, and so the claims are properly in the patent.

■ Defendant contends that the patented structure is inoperative because the latch cylinder shown in Fig. 1 to 6, inclusive, of the patent drawings, cannot move into contact with the upwardly projecting flange C⁹ on the base because the securing means G⁵ would move into contact with the top of the spindle, shaft, or pin C before the bottom of the cylinder could bear against the flange C⁹. The original specification clearly describes the movement of the cylinder into contact with the base, and an examination of the drawings reveals the fact that the elements will move into contact with one another. It so appears to the eye. If under a microscope it should appear not to be the case, defendant's argument is without force, because the specification is clear on this subject, and any error in the drawings may have been occasioned by the draftsmen's unintentional mistake, but such a mistake cannot invalidate an otherwise valid patent for a meritorious invention.

## B. The Prior Art.

Many prior art patents were cited by the defendant in an effort to prove invalidity of the claims in suit, and, as three of them are particularly relied upon, they will be discussed in their order.

### The Ackerman et al. Patent.

The latch cylinder of this patent is prevented from falling forward and under the hood, but it lacks "means including a spring associated directly with the latch assembly * * * adapted to withdraw said latch member, when released, outwardly from the closure and to hold it withdrawn, and means for limiting such withdrawal to predetermined position," as called for in claim 18 of the patent under discussion. It is obvious that when the substantially hemispherical bottom of the latch cylinder of Ackerman et al. comes into contact with the hemispherical base, the spring holds the latch cylinder in the position in which it happens to strike the base. There is no tendency of the cylinder to move further outwardly and particu-

larly is there no means included in the Ackerman et al. device which limits the outward movement of the cylinder. The same is true as to claim 19. Claim 20 specifies "the latch member and base being provided with opposed contacting surfaces adapted, in response to the action of said spring, to hold said latch in outwardly tilted position away from said closure and out of the normal line of movement thereof." This element is missing in the Ackerman et al. device because the opposed contacting surfaces of the cylinder and base thereof do not have the function of the corresponding elements of the claim.

### The Weigel Patent.

When the latch of this patent is released, the flat bottom of its cylinder strikes the base, and the cylinder will be maintained in the position in which it contacts with the base. The spring has no function in tilting the latch. There is nothing automatic in this patent nor in the Ackerman et al. patent, supra, about the withdrawal of the latch to tilted position by the spring of the device.

### The Bourque Patent.

In this patent a hood latch is described comprising a latch member and a base to which it is secured in combination with a spring which keeps the latch in engagement with the hood. This spring, in combination with shoulders on the base, maintains the latch in tilted position away from the hood, and the shoulders limit the opening movement of the latch. However, the spring has no function in moving the latch outwardly from the hood. Consequently, the claims do not read on this construction. In view of the foregoing, I must conclude that the claims are valid and not anticipated by the prior art patents.

### C. Prior Use.

The defendant has offered evidence to show manufacture commencing in 1924 and continuing to the date of trial of a latch referred to in the testimony as the "Yellow Cab Latch C-127," Defendant's Exhibits J and O. In this construction the latch, when released from the hood, is brought down by a spring against a base on the automobile frame, which base is inclined away from the hood, so that the latch cylinder and the parts connected therewith are shifted outwardly from the hood into inclined position and held in such position under spring tension. The inclined base limits the outward movement of the latch cylinder and the parts connected therewith to a predetermined position. This latch is a complete anticipation of the claims in suit, so that, if the "Yellow Cab Latch," Defendant's Exhibits J and O, establish a date prior to Gilmore, the claims are invalid.

The testimony of witnesses produced by the defendant, supported by documentary evidence, amply establishes that the "Yellow Cab Latch, C-127," Defendant's Exhibits J and O, was manufactured by the Bassick Company as early as 1924.

The decisions on which plaintiff relies to defeat defendant's prior use are not in point, because they refer to testimony unsupported by documentary evidence. Plaintiff's argument that the documentary evidence adduced on behalf of the defendant with reference to the "Yellow Cab Latch" was changed subsequent to the date established is not persuasive because the documentary proofs have been identified by a number of witnesses who are entirely disinterested and have absolutely no concern with the outcome of this suit. Nor have they in the slightest degree been impeached, and no reason has been advanced why they should have formed what amounts, if the argument is sound, to a conspiracy to defeat plaintiff's patent. Their testimony convinces beyond a reasonable doubt and fully meets the rule imposed in the Barbed Wire Patent Case, 143 U. S. 275, 12 S. Ct. 443, 36 L. Ed. 154; Eibel Co. v. Paper Co., 261 U. S. 45, 60, 43 S. Ct. 322, 67 L. Ed. 523.

The main point on which plaintiff relies to prove that the "Yellow Cab Latch" should not be held to amount to prior use seems to turn around the inclined base to which the spindle of the latch cylinder is attached. Plaintiff asserts that from the documentary evidence adduced it would appear that the structure manufactured by the defendant in 1924 did not embody an inclined base, so that the latch cylinder would not swing outwardly to an inclined position. The proofs are just the contrary. I therefore must conclude and hold that the "Yellow Cab Latch" of Defendant's Exhibits J and O was manufactured by the defendant in 1924 and continued thereafter and subsequent to the date of the application which resulted in the second patent in suit. Inasmuch as plaintiff does not deny that this latch is a complete anticipation of the claims in suit, I must therefore conclude and hold that claims 18, 19, and 20 of the Gilmore patent, No. 1,661,891, are invalid.

586

#### D. Infringement.

In view of the conclusions expressed, it may seem unnecessary to consider the question of infringement, but the matter is so clear that I may state my views in order to complete a full consideration of all the defenses.

Defendant argues that claims 18, 19, and 20 are not infringed because its latches have no flange or lug corresponding to the elements $C^9$ and K in figures 2 and 7, respectively, of the drawings of the patent in suit, as called for in claim 18, nor the "abutment member between latch and base," as specified in claim 19, nor are "the latch member and base provided with opposed contacting surfaces," as specified in claim 20. In its argument to show invalidity of claims 18, 19, and 20 by reason of the prior use by the "Yellow Cab Latch," defendant entirely disregarded these features because Defendant's Exhibits J and O do not disclose the flange $C^9$ nor the lug K of plaintiff's structure. Now, reversing the maxim, "What would infringe if later will anticipate if earlier," it is obvious that defendant, having prevailed with the "Yellow Cab Latch" prior use as an anticipation, the "Yellow Cab Latch" structure infringes the claims in suit. As there is no material difference between Plaintiff's Exhibits 9 and 5 and the "Yellow Cab Latch," it must be held that, if the claims be held valid, defendant's latches would infringe claims 18, 19, and 20 of the patent in suit.

For the foregoing reasons the defendant may have a decree holding claims 11 and 12 of patent No. 1,609,165 and claims 18, 19, and 20 of patent No. 1,661,891 invalid.

Submit decree accordingly.