## BELLAVANCE v. FRANK MORROW CO., Inc.
### No. 3914.

Circuit Court of Appeals, First Circuit.

Feb. 4, 1944.

Rehearing Denied March 17, 1944.

See 141 F.2d 378.

420

Harold E. Cole, of Boston, Mass., for appellant.

Nathaniel Frucht, of Providence, R. I. (Hailes L. Palmer, of Providence, R. I., of counsel), for appellee.

Before MAGRUDER, MAHONEY, and WOODBURY, Circuit Judges.

WOODBURY, Circuit Judge.

The plaintiff is the owner of two United States patents: No. 2,108,247 which was granted to him on February 15, 1938, and No. 2,114,930 which was granted on April 19, 1938, to Peter Manickas and assigned to him on April 16, 1941. They are for a "Bracelet and Method of Making the Same" and for a "Bracelet" respectively. The first patent contains four claims, one article claim followed by three method claims; the second contains only two claims, both article ones.

The plaintiff filed complaints against the defendant in the court below alleging infringement of both patents generally, that is, he did not specify infringement of any particular claims of either patent, and the defendant answered denying infringement and alleging that both of the plaintiff's patents were invalid for anticipation and lack of patentable invention.

The court below found that the claims of both patents were fully anticipated by the prior art; that both the Bellavance and Manickas bracelets were not the result of invention as distinguished from mere mechanical skill, and that both patents had not been infringed by the defendant. Apparently, however, it did not consider claims 3 and 4 of the Bellavance patent. Following the opinion and judgment of the district court the plaintiff moved "That the Court Amend its Findings and Make Additional Findings and Amend its Conclusions of Law and Make Additional Conclusions of Law" and also "That the Court Vacate the Judgment for Defendant and Amend or Enter a New Judgment". In connection with the latter motion the plaintiff filed requests for rulings of law. The court below denied these motions and the requests for rulings and the plaintiff thereupon appealed to us therefrom and also from the judgment entered for the defendant in accordance with the findings of invalidity and non-infringement.

The patents in suit relate to ornamental bracelets of the type which consist of parts joined together by hinges, usually two semi-circular parts joined by one hinge, and provided with a catch or latch so that when opened and put on they can be fastened closely around the wrist of the wearer so they will not fall off. Bracelets of this type are admittedly old, having been well known at least since 1880, and probably since long before that. The plaintiff makes no claim that his patents cover them. What he does claim under his patents is a bracelet of the above type with the hinge and catch members attached to the curved members by what is called swaging, and the method of practicing swaging with mechanically operated tools on the very thin metal stock ordinarily used in the manufacture of bracelets.

The evidence is that for years hinges and catches were fastened to the curved sections of bracelets of the type under consideration by soldering or riveting. But the plaintiff says that these methods are not only expensive but are also unsatisfactory because solder does not always hold and rivets mar the appearance of the finished product. He says that his method avoids these undesirable features.

His method consists in forming the curved sections of bracelets of the kind described "from channel shaped metal stock" or stock "shaped to provide lateral flanges located upon opposite sides thereof

and extending inwardly from the inner curved surface of the member".[1] Between these lateral flanges he inserts the plate portion of a hinge, or the analogous part of a catch, and then fastens them in place by striking a portion of the inner face of the flange down onto the hinge plate or catch plate so as to grip it against the bottom of the inner surface of the curved member. This is swaging.

The Manickas scheme is very much like the one used by Bellavance. Both used curved members made of channel shaped stock and both employ swaging, but Manickas' lateral flanges do not extend for their whole distance straight out at right angles from the flat part of the stock as Bellavance's do. They extend out at right angles only a short way and then are bent toward one another usually about 90°, so that in cross section the stock used by Manickas is shaped roughly like a rectangle with most of the mid-portion of one side removed. In Manickas' the hinge or catch plate to be fastened is slid in between the flanges or beads and under the parts of the flanges which overhang and are fastened by swaging down portions of this, the overhanging part of the flange.

With this explanation it is hoped that the claims of the patents, which are copied in the margin,[2] will be intelligible.

[1] This means that the stock used for the curved members is shaped in cross section like a squat, straight-sided, flat-bottomed U, the outside of the bottom of which is on the outside of the bracelet as it is worn.

[2] Bellavance.

"1. A bracelet structure comprising two or more longitudinally curved sections having lateral flanges inbent from flat stock of uniform thickness to form internal channels therebetween, holding members connecting adjacent ends of said bracelet sections and each having a portion fitting within the internal channel of one of said sections and abutting against the lateral flanges carried thereby, and clamping lugs struck down from said flanges engaging portions of said holding members for securing each holding member firmly to a bracelet section.

"2. The method of forming a bracelet structure which comprises, shaping metal stock to form a curved section having lateral flanges, fitting a portion of a holding member between the lateral flanges adjacent to an end portion of said section, and striking down portions of the lateral flanges upon the part of said holding member fitted between the flanges to clamp said holding member to said section while supporting the lateral faces of said flanges at points adjacent to the struck down portions.

"3. The method of making a bracelet structure which comprises, forming curved sections having lateral flanges extending from one side thereof, fitting portions of a holding member between the lateral flanges adjacent to certain of the end portions of said sections, and striking down portions of the lateral flanges upon the portions of said holding member fitted therebetween while providing a support for the outer faces of the flanges to secure said holding member to said sections while at the same time preventing distortion of the flanges.

"4. The method of forming a bracelet structure or the like which comprises, shaping metal stock to form a section having upstanding lateral flanges, fitting a portion of a member between the lateral flanges, and swaging down portions of the lateral flanges upon the part of said member located between the flanges to form clamping lugs and secure said member to the section while supporting said lateral flanges both outwardly and inwardly at points adjacent to the clamping lugs during the swaging operation to prevent distortion of the flanges during the formation of the clamping lugs."

Manickas.

"1. A bracelet structure comprising arcuate sections, a channel-shaped flange at each side edge of the sections with the flanges directed inwardly toward each other, a hinge member for holding two adjacent ends of the sections together including side plates respectively positioned between the flanges with the edges of the side plates beneath the flanges at the opposite side edges of the associated section and lugs struck from the inwardly directed portions of said flanges into binding engagement with the hinge plates for anchoring the hinge member to the bracelet sections.

"2. A bracelet structure as set forth in claim 1, characterized by a separable clasp connection between the other ends of the bracelet sections including a plate having one end positioned between opposite edge flanges of a section with the side edges of the plate beneath the flanges, lugs struck from the inwardly directed portions of said flanges into binding engagement with opposite side edges of the clasp plate and the other end of the clasp plate projecting from the carrying section of the bracelet and having separable snap connection with the free end of the other bracelet section."

■ Now swaging is not a new technique. We can take judicial notice of the fact that in one form or another it has been practiced for years and probably for centuries by blacksmiths. It has also been used by other workers in metals, including workers in thin metal parts of small dimension like pen points. See C. Howard Hunt Pen Co. v. Radiant Point Pen Corp., 2 Cir., 135 F.2d 870. This is not disputed by the plaintiff but he contends that it was not only new to swage a lug out of the thin metal stock used in the art of making bracelets but also that to do so called for an exercise of the faculty of invention. As we have seen, the court below thought otherwise and we agree.

■■ First we shall consider the article claims; claim one of the Bellavance patent and both claims of the Manickas patent.

It seems to us clear that all of these claims are anticipated by the prior art, particularly by the Hiering patent (No. 1,996,109) upon which the court below principally relied. This patent was granted on February 17, 1934 for "Bag Frame Member and Method of Securing Elements Thereto". It discloses a metal frame for women's hand bags made out of thin, channel shaped stock and having mitered corners reenforced by a flat angle-iron inserted between the flanges or side walls and gripped securely in place by what the patentee calls "tabs" (it is evident from the drawings that "tabs" are identical with what are called "lugs" in the plaintiff's patents), struck out of the inner surfaces of the flanges. Obviously a hand bag frame is not a bracelet, but the art of making one is not poles apart from the art of making the other. The arts are sufficiently analogous to one another so that we can discern no exercise of the faculty of invention in conceiving the idea of using a technique practiced in one, the art of making bag frames, in the other, the art of making bracelets.

That Hiering anticipated the Bellavance article claim is clear (both used straight upstanding flanges), but the plaintiff contends that the same cannot be said with respect to the Manickas claims because Hiering did not show Manickas' inbent or over-hanging flanges. This is true, but it does not seem to us that it is enough to

negative anticipation. The difference in the shapes of the flanges is too minor a matter to require the conclusion as matter of law that the ordinary journeyman familiar with Hiering would not think of applying his teaching to the type of flange conceived by Manickas.

We come now to the method claims; claims 2, 3 and 4 of the Bellavance patent.

Although as we have already noted there is some doubt as to whether or not the court below actually made any findings at all with respect to claims 3 and 4, there can be no doubt that it found claim 2 invalid. We shall address our attention to this claim first and then turn to the others.

·■ Claim 2 is the plaintiff's generic method claim. It covers striking down a portion of the lateral flanges "while supporting the lateral faces of said flanges at points adjacent to the struck down portions". This quoted phrase contains the crux of the plaintiff's method. He says that without support the flange of bracelet stock, being necessarily thin, would crumple or collapse when struck by a punch or die for the purpose of striking a lug out of it, and that to think of supporting it to prevent its crumpling was not only new but also called for an exercise of the inventive faculty. We admit that the idea of supporting thin metal while striking a piece out of its edge was, so far as the record in this case is concerned,[3] new with Bellavance, but we have grave difficulty in seeing how it could possibly be said that an exercise of the faculty of invention was required to conceive the idea. Making full allowance for the fact that a new technique may seem obvious only after someone else has thought of it, still it seems to us too clear for argument that any journeyman who discovered that a piece of thin metal collapsed or crumpled when he struck it on the edge would at once think of the expedient of supporting it at points adjacent to the place where he desired to strike it. We believe that this is the kind of thing which workmen are accustomed to do almost as a matter of routine and we cannot believe that any uncommon skill was involved in conceiving a vise-like "jig" such as is disclosed in the Bellavance patent.

To be sure Bellavance appears to have been the first one to use the method dis-

---

[3] Hiering used heavier stock for his bag frames than is used in making bracelets and apparently he did not need to support it when striking down his "tabs".

closed in his patent in the art of making bracelets, but in the absence of evidence that the art was waiting impatiently for his contribution we cannot say that invention is unmistakably indicated thereby. It can be said that the Bellavance method is ingenious and a step forward in the art of making bracelets, but in view of the high standard of invention indicated by recent opinions of the Supreme Court (see Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 91, 92, 62 S.Ct. 37, 86 L.Ed. 58), we cannot believe that it is a sufficiently substantial step to warrant the grant of a patent. Atlantic Works v. Brady, 107 U.S. 192, 200, 2 S.Ct. 225, 27 L.Ed. 438.

The third and fourth method claims of the Bellavance patent are more specific than the second. The third covers "support for the outer faces of the flanges" to prevent distortion while swaging, and the fourth covers support of both the inner and outer faces for the same purpose. What we have said with respect to the second claim applies with full force to them. This being so there is no need to construe the opinion of the district court for the purpose of determining whether or not it actually made findings with respect to the third and fourth claims because even if it did not, nothing would be served by remanding for findings which on the evidence in the record could in reason only be that the claims are invalid for want of invention. See Kustoff v. Chaplin, 9 Cir., 120 F.2d 551, 559.

It follows from the invalidity of the plaintiff's patents that the question of infringement and the questions raised by the plaintiff's attempt to appeal from the motions which he made after judgment below need not be considered.

But one other question remains. The plaintiff-appellant complains that the defendant-appellee stuffed the record by including in it a lot of evidence and a number of patents immaterial to any question raised by this appeal. For this reason he says that he should not be taxed over one-half the costs of printing the record on appeal. He argues that since in his statement of the points upon which he relied in taking this appeal he did not "challenge the court's findings that were based on evidence which dealt with the article claims; but only its final conclusion from said findings" it was wholly unnecessary to include testimony concerning the article claims in the record. Strictly speaking the plaintiff may be right, but if the record had contained only the testimony designated by the plaintiff, we would have been wholly unable either to understand the patents in suit or to pass upon the plaintiff's arguments with respect to the validity of the article claims. The record is not overly voluminous for a case of this kind. We do not find it stuffed. The same applies to the six prior art patents included in the record by the defendant. They are not particularly pertinent, to be sure, but they are fully as pertinent as ten of the twelve prior art patents printed in the record by order of the plaintiff, and they show something of the progress of the art in which the patents in suit lie. They are not so wholly beside the point that we can say the record was stuffed by putting them in.

The judgment of the District Court is affirmed with costs to the appellee.