### TURINI v. ALLENS MFG. CO., Inc.
### Civ. A. 1073.

United States District Court
D. Rhode Island.
Aug. 1, 1951.

Joseph Mainelli and Max Schwartz, Providence, R. I., for plaintiff.

Ralph Rotondo, Providence, R. I., for defendant.

HARTIGAN, Circuit Judge.[1]

This is an action brought by John A. Turini against Allens Manufacturing Co., Inc. for alleged infringement of the following United States Letters Patents: 2,481,179 "Method of Making Buckles," issued Sept. 6, 1949; 2,481,180 "Buckle Assembly Machine" issued Sept. 6, 1949 and 2,488,352 "Buckle Assembling Device" issued Nov. 15, 1949.

The plaintiff prays for an injunction against further alleged infringement, for an accounting, for costs and attorney's fees and for treble damages for alleged wilful and deliberate infringement.

The defendant in its answer denies infringement and alleges in substance that although the letters patent were issued to the plaintiff, yet the plaintiff was not the original, first and sole inventor; that the inventions are not novel but are substantially identical with or like previous patents; that in view of the prior art and common knowledge the plaintiff's patents do not constitute any patentable inventions and that the creation of the subject matter of the plaintiff's patents came about solely through the exercise of ordinary mechanical skill.

The three patents in suit were issued to the plaintiff and are still owned by him and relate to the manufacture of shoe buckles. The shoe buckle in question comprises a metallic pierced buckle frame having two end bars and a central cross bar. Attached to the central cross bar is a tongue which can be pivoted on the bar for insertion into the hole in a leather strap. Loosely attached to one of the end bars is a roller

---

1. Designated to hold District Court in District of Rhode Island.

which is designed to permit easier movement of the strap through the buckle.

The general process of manufacture previous to the plaintiff's method required a combination of automatic metal stamping and foot press hand operations to assemble these three pieces. That method of manufacture was as follows: (1) a strip of metal passed through a power press having simple well known piercing and cutting tools which cut the buckle frames; (2) a second automatic power press with a separate strip of metal cut pieces to form the roller and bent these pieces into a U-shape; (3) a third automatic power press operated on a length of wire and cut small pieces of wire into a general L-shape for use as a tongue; (4) the assembly of the three pieces required two foot press operations. One foot press was equipped with a bending tool for bending the short leg of the L-shaped tongue around the central cross bar of the buckle blank. The operator placed one tongue and one buckle, by hand, in position under the press and kicked the foot pedal to complete the bending and (5) at another foot press, the buckle was then placed, by hand, into the U-shaped roller and the press bent the U-shaped into circular form to close the roller around the buckle.

The entire procedure required three power presses, two foot presses, and the services of at least one person to operate the power presses and two persons to operate the two foot presses.

The plaintiff claims to have conceived the idea that, if the various assembly processes could be done automatically, the buckle itself could be retained on a continuous metal strip to pass from one automatic operation to the other until final assembly, thus eliminating manual handling. The plaintiff in 2,488,352 claims to have combined the steps of stamping out the L-shaped wire tongue on the automatic press and the assembly thereof by an operator on a kick press into a single operation and then to have attached the tongue to a cross bar on a continuous strip of metal passing through the "buckle assembling device," rather than on an individual buckle.

The plaintiff in 2,481,180 claims to have combined the step of blanking a U-shaped roller and the step of attaching the U-shaped roller on a foot press to the buckle frame into a single automatic operation, and also to have assembled the U-shaped roller on a cross bar passing through the "buckle assembly machine" on a continuous strip of metal.

With the completion of these two devices the plaintiff claims that he has a complete process which is the subject matter of plaintiff's 2,481,179 and that this process requires the use of four automatic power presses. A continuous strip of metal is positioned in front of the first power press and passes successively without further handling continuously through all four machines. The first power press is a simple piercing and dapping tool which shapes the buckle on the strip and pierces the holes therethrough to form the cross bars. The last power press cuts the completed buckles from the strip. These two power presses, therefore, accomplish what the single power press did in the old method, that is, it cuts a buckle blank from the strip. However, between these two power presses, the plaintiff interposes two power presses carrying the two devices set forth in 2,481,180 and 2,488,352. The first such power press automatically attaches rollers successively to each blanked out opening on the strip. The second such power press automatically attaches tongues to successive openings on the strip, with the result that when the last blanking operation is performed, a completed buckle with all three parts assembled drops from the strip, rather than just the buckle blank.

The plaintiff's process includes four distinct steps:—(1) the piercing operation; (2) the roller attaching operation; (3) the tongue attaching operation and (4) the blanking or cutting operation.

The plaintiff admits that the first and last operations are old and well known to the art. However, he contends that the roller and tongue attaching operations are new and were recognized as new by the United States Patent Office, not only by the issuance of 2,481,179, but also by the fact that

the machinery for performing these operations was considered new and is the basis of the subject matter of 2,481,180 and 2,488,352.

The plaintiff argues that by the use of his machines and method of assembly, all manual handling of the three buckle parts is eliminated and the buckle is automatically assembled in a continuous unbroken operation at high speed and, while previously the rate of production depended on a manual method of assembly, that by the use of the plaintiff's machines and method, the rate of production is limited by the speed with which the machines can be operated.

The plaintiff contends that as to the "method of making buckles" (2,481,179) the second and third steps, which relate to the automatic attachment of a roller and a tongue to a continuous strip, provides "an efficiency of operation heretofore unknown in the art" and are new and not known before.

While it may be true that the attachment of two separately formed pieces of metal (roller and tongue) to a continuous strip may not have been previously patented, I am convinced by the evidence that the plaintiff's improvements were anticipated or foreshadowed by the prior art and that the result achieved was through an aggregation of old elements and that the patents in suit are not the result of invention.

As to 2,481,179, the prior art discloses both Hellman 1,795,559 and Russell 1,882,-369 made buckles by the continuous strip method. Thus, the prior art reveals a method and the efficiency of operation very similar to that claimed by the plaintiff.

The testimony of Oakley, a manufacturer of buckles since 1939 and a toolmaker for twenty years, discloses that he stamped shoe buckles from a continuous strip; that since 1936 he has known of the automatic process and since 1942 has known of the roller tool. He further testified that it would be within the knowledge of a mechanic to do these steps in sequence.

In cross examination he testified that he attached the tongue automatically in 1939 and the roller in 1942.

Patent 2,481,180 relating to a device for applying rollers to the cross bars of buckles interconnected in the form of a strip, is composed of old elements. See Howe 366,-585 "Machine for making and attaching buckle rollers." Wilson 356,055, "Machine for making and attaching buckle rolls," teaches the elements of 2,481,180 except the strip of interconnected buckles. This exception is not important as indicated above because attaching parts to a continuous strip, such as tongues in Russell 1,882,-369, is old and Turini's improvement involves mechanical skill rather than invention even though it may be conceded that the functions performed by Turini are new and useful.

The Supreme Court said in Cuno Engineering Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed 58: "* * * Under the statute, 35 U. S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art. * * *"

Patent 2,488,352, relating to a machine for assembling tongues to buckle frames is also composed of old elements, especially in view of Russell 1,882,369. This machine, like the roller device, strikes me as the result of mechanical skill and not of invention.

The language of the Supreme Court in the case of Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 71 S.Ct. 127, is applicable to Turini's three patents in suit. The court said, 340 U.S. at page 153, 71 S.Ct. at page 130: "* * * This patentee has added nothing to the total stock of knowledge, but has merely brought together segments of prior art and claims them in congregation as a monopoly."

It is my opinion that no new result is achieved in these patents but rather that they are the product of mechanical skill, lacking in inventive genius and do not "add to the sum of useful knowledge" and are, therefore, invalid. See Cuno Engineering Corp. v. Automatic Devices Corp., supra; Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., supra; Grosjean v. Panther-Panco Rubber Co., 1 Cir., 113 F.2d 252; Mabey v. Howard & Lewis Motor Sales, 1 Cir., 132 F.2d 40; Bellavance v. Frank Morrow Co., 1 Cir., 140 F.2d 419; Scott & Williams v. Lasticnit Co., 1 Cir., 186 F.2d 416.

Judgment, therefore, will be entered for the defendant, together with costs.

It is so ordered.