PALMER et al. v. KAYE et al.
No. 12495.

United States Court of Appeals
Ninth Circuit.
Nov. 16, 1950.

F. A. LeSourd, Paul Bliven, Seattle, Wash., for appellant.

Fred W. Catlett and Catlett, Hartman, Jarvis & Williams, all of Seattle, Wash., for appellee.

Before MATHEWS,[1] HEALY and POPE, Circuit Judges.

POPE, Circuit Judge.

This was an action for injunction and damages for infringement of United States Letters Patent No. 2074665, issued March 23, 1937, to plaintiff, Palmer, for a woven wire screen. The district court held that the patent was invalid for want of novelty and invention and because of insufficiency of the statement of claims, and held also that, assuming the validity of the patent, there had been no infringement.

The record shows that the patent in question relates to the art of forming woven wire screens for industrial purposes. These are the wire screens used for the separation into desired sizes, of aggregate in the mining, sand and gravel, and other businesses where it is necessary to classify ore, rock, and other materials.

Such screens are ordinarily set on a slope or pitch, and caused to vibrate rapidly so that the material to be sorted passes over them from one end to the other.

Industrial woven wire screens have been known for more than one hundred years. In their original form they were woven like cloth, or baskets, over and under. The place where the wire was bent around the crossing wire was called a "crimp". As this old form of wire screen was so bent that the screen was exactly the same on either side, it was referred to as a "double crimp" screen.

Because of the great weight of material which an industrial screen must bear to serve the purposes mentioned, the old style basket-weave screens were subject to excessive wear. This was due to the fact that since no matter which side was used such a screen presented a more or less sharp bend or crimp over which abrasive material moved. This defect made them impractical where the openings were of any considerable size. For classifying larger and heavier material, flat boiler-plate with holes had to be used. This proved unsatisfactory, for it was too smooth to force the material to drop through the holes.

Efforts were made by others to overcome the rough surfaces mentioned, and when their improvements in this respect developed further operating problems, additional devices were brought forward. The prior art thus developed is all evidenced by previous patents.

Potter, (Patent No. 1,139,469, May 11, 1915,) devised a screen so woven that all

the roughness developing from the crimps was on one side of the screen, while the opposite side was flat. This was accomplished by so constructing the screen that wherever the wires crossed, the wire which was uppermost at that point, was perfectly straight or flat, while the wire crossing below was bent in a sharp, deep crimp or cup shape, so that the upper, straight wire lay in the cup to the full depth of its diameter.

The advantage of the Potter screen was that it provided one side that was flat, with greater wearing surface. Its disadvantages were two: the crimps or cups were so sharply bent as to tend to weaken or fracture the wire; and the crossing straight portion of wire tended to slide in the cup or crimp, and thus distort the screen, making it "sleazy".

Helman (Patent No. 1,678,941, July 31, 1928), developed a screen using the old double crimp but flattening the crests of the curve in the wire. This was asserted to provide a better locking position and a harder, more rigid wire.

Boehm, (Patent No. 1,829,498, October 27, 1931,) produced a double-crimp screen, but introduced in the wire between crimps, intermediate shallower crimps designed to give the main crimps in which the transverse wires rested, a more complete curve, without too much bending at that point, and thus tightening the juncture and permitting the use of harder wire because of the less abrupt bend.

Some of those who manufactured the Potter screens found it desirable to place a nick in the straight portion of the wire where it was seated in the deep cup, to keep it in place and thus meet the distortion difficulty with this type of screen. Galloway, (Patent No. 1,907,056, May 2, 1933,) undertook to accomplish the object of this nick by developing a screen with a sharp crimp like Potter's. It also had a smoother side and a rougher side, but to prevent shifting of the alternate transverse wires, Galloway made in the wire, which in Potter's was straight, a shallow depression or crimp in which the transverse wires would rest. So the portion of the wire which was straight in Potter's screen, was, in Galloway's given a formation of three humps between every set of cups, these humps being on the smoother side, and the corresponding depressions on the opposite side. The Galloway device prevented distortion, but the numerous crimps made it difficult to manufacture the screen from hard wire.

The only contribution of Brown (Patent No. 1,920,495, August 1, 1933,) was a method of making woven wire screens by crimping soft wire and then hardening the wire by heat treatment. His screens were the same on both sides.

What has here been described is the whole of the prior art, so far as the record shows. It also appears that the screen, other than that of Palmer, which has been most used is the Potter screen, the patent for which has expired.

Palmer's screen was one which in substance was so woven that on the one side, (the wearing side), the wires would traverse an elongated arch, extending the width of two meshes of the screen, while on the other side, the wire was formed into a shallow crimp, thus forming an angle as contrasted with the arch. The arches intersect at the angular shallow crimps. The effect is to make a screen which is much smoother on one side (the side of the arches), than on the other (the side of the crimps and angles).

Because of this relatively smooth or flat side (although not so flat as Potter's), the wearing surface is subject to less damage from abrasion than in the case of the double-crimp screen. And the crimps and angles, although relatively shallow, hold the screen firmly against distortion. Because of the lack of abrupt curves or angles in the wire or rods forming the screen, it is possible to fabricate it from much harder materials, as by cold crimping from spring steel wire.

■ Both parties agree that the basic issue here is whether what Palmer did constituted invention. We think there is substantial evidence to disclose that the Palmer screen was a useful new device; but before it can be held invention, something

further must be found. The great difficulty that confronts Palmer are the facts that (1) the crimp, or a shallow crimp, was something long known in the art; and (2) the construction of screens with the single, or one-side crimp, was anticipated in the Potter screen.

Palmer contends that invention derives from his combination of the arch and the crimp. Appellee says, and the court held, that the arches or bows are but "a natural by-product" of the crimp.

The witness Lippincott, qualified by many years' experience as draftsman, designer and engineer for a large manufacturer of all types of woven wire screen, testified as to the production of the arch: "When the wire of which the screen is made comes from the coil it possesses a natural curvature. The crimping of the wire in a Flat Top type naturally produces an arch when you do not employ dies to prevent. We, of the Roebling Company, design our crimping dies in such a way as to remove the arch. Our dies are made with a hard flat plate at the bottom to remove or prevent this arch or bow from forming as the crimps are produced. * *. * That arch, whether a natural arch as a result of coiled wire, or an arch produced by the crimping, was known to the manufacturers of woven wire screens prior to the dates of my prints. This bow or arch is a natural result of crimping unless something is done to prevent it. We knew of its existence and did something to prevent it for the reason just mentioned. Other manufacturers knew of it also, but we cannot say just how long previous to the design of our dies. Several years to my knowledge. That arch was removed deliberately by John A. Roebling's Sons Company in order to give longer life to the screen. I am acquainted with the S. H. Palmer Patent No. 2074665. At the date of this patent there was nothing new about it. It involves nothing that was not already known by myself at the date of this patent. * * * This patent does not include anything not already known to ourselves and other manufacturers of woven wire screens at about 1932 or slightly before that date. * * * We were famili-

ar with the art of wire screen weaving for several years prior to 1932. The flat top construction type of woven wire screens was known and in use and being manufactured prior to that time. An arch or bow between crimps similar to the arch in the Palmer patent was known to manufacturers of woven screens prior to August 2, 1932. I am familiar with the Winfield Scott Potter patent No. 1139469, issued May 11, 1915." "41. * * * does the S. H. Palmer patent contain any new and useful features which do not appear in the Potter patent? * * *" "Answer: No."

■ We think that on the record here the court below would be justified in concluding, as it evidently did, that any mechanic, making a Potter screen and desiring to make the one-side crimp more shallow, would necessarily turn up with the Palmer screen. Such a result would appear to come from a mere change in form, manifesting a difference in degree only.

■ We think the improvement is one within the rule stated in Cuno Corp. v. Automatic Devices Corp., 314 U.S. 84, 90, 62 S.Ct. 37, 40, 86 L.Ed. 58, as follows: "We may concede that the functions performed by Mead's combination were new and useful. But that does not necessarily make the device patentable. Under the statute, 35 U.S.C. § 31, 35 U.S.C.A. § 31, R.S. § 4886, the device must not only be 'new and useful', it must also be an 'invention' or 'discovery'. Thompson v. Boisselier, 114 U.S. 1, 11, 5 S.Ct. 1042, 1047, 29 L.Ed. 76. Since Hotchkiss' Ex'x. v. Greenwood, 11 How. 248, 267, 13 L.Ed. 683, decided in 1851, it has been recognized that if an improvement is to obtain the privileged position of a patent more ingenuity must be involved than the work of a mechanic skilled in the art * * *. That is to say the new device, however useful it may be, must reveal the flash of creative genius not merely the skill of the calling. If it fails, it has not established its right to a private grant on the public domain."

We think that what Palmer did here was not invention, but a mere exercise of the skill of the calling, and an advance plainly indicated by the prior art.

Since our agreement with the district court upon this point requires an affirmance of the judgment, it is unnecessary to consider the other grounds given for the court's conclusion.

Affirmed.